IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JOSHUA SHELTON                                                                    PLAINTIFF

v.                                 Case No. 3:23-cv-00009 KGB

NUCOR-YAMATO STEEL COMPANY,
Limited Partnership, and its General
Partners                                                                         DEFENDANT

## OPINION AND ORDER

Before the Court is defendant Nucor-Yamato Steel Company's ("Nucor") motion for summary judgment (Dkt. No. 26). Mr. Shelton brings this action against Nucor, his former employer, for alleged violations of: (1) the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12181 *et seq.*; (2) the Arkansas Civil Rights Act of 1993 ("ACRA"), Arkansas Code Annotated § 16-123-107 *et seq.*; (3) the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; and (4) the Fourteenth Amendment of the United States Constitution (Dkt. No. 1). The facts of this case arise out of an injury that Mr. Shelton suffered while on the job at Nucor (*Id.*, ¶¶ 19–29). Mr. Shelton alleges that the injury left him disabled within the meaning of the ADA and ACRA and that Nucor discharged him because of his disability in violation of the ADA and ACRA (*Id.*, ¶¶ 18–35). Mr. Shelton also alleges that he has been denied care and treatment by the State of Arkansas in violation of his due process and equal protection rights under the Fourteenth Amendment (*Id.*, ¶ 23). Mr. Shelton therefore seeks compensatory and punitive damages, as well as an injunction prohibiting Nucor from engaging in unlawful employment practices (*Id.*, ¶¶ 36–38).

In its motion for summary judgment, Nucor contends that no genuine dispute of material fact exists and that Nucor is entitled to judgment on each of Mr. Shelton's claims as a matter of

law (Dkt. No. 26).  Mr. Shelton responded in opposition to Nucor's motion (Dkt. No. 32), and Nucor replied (Dkt. No. 35).  Nucor filed a motion to strike portions of Mr. Shelton's statement of material facts in dispute and summary judgment exhibits (Dkt. No. 36), and Mr. Shelton responded in opposition (Dkt. No. 40).  Nucor replied (Dkt. No. 42).  For the following reasons, the Court denies Nucor's motion to strike (Dkt. No. 36), and grants Nucor's motion for summary judgment (Dkt. No. 26).

I.      **Motion To Strike**

In its motion to strike, Nucor contends that the Court should strike portions of Mr. Shelton's statement of material facts in dispute for lack of citation to record evidence (Dkt. No. 36, ¶ 3).  Nucor contends that, when taken together, Federal Rule of Civil Procedure 56(c)(1) and Local Rule 56.1(b) require Mr. Shelton to provide record citations in support of each statement of material fact that is alleged to be in dispute (Dkt. No. 37, at 2).  Likewise, Nucor argues that the Court should strike portions of Mr. Shelton's affidavit (Dkt. No. 32-1), marked as Exhibit A to Mr. Shelton's response in opposition to the motion for summary judgment, for stating legal conclusions and other statements for which Mr. Shelton has no personal knowledge (Dkt. No. 36, ¶ 4).

Specifically, Nucor moves to strike Mr. Shelton's responses to paragraphs 22 and 30 of Nucor's statement of facts because Nucor contends Mr. Shelton provides no citation to record evidence (Dkt. No. 37, at 2).  Nucor also moves to strike what it essentially contends to be nonresponsive information in Mr. Shelton's responses to paragraphs 8, 9, 12, and 32 of Nucor's statement of undisputed facts, arguing that everything after the "agreed" in each of those responses includes no citation to record evidence (*Id.*).  Finally, Nucor challenges Mr. Shelton's affidavit submitted in support of his response to the motion for summary judgment (*Id.*, at 3).  Nucor asserts

that paragraphs 3, 4, 6, 7, 8, 9, 10, and 11 of the affidavit are legal conclusions and statements for which Mr. Shelton has no person knowledge (*Id.*).  As a result, Nucor moves to strike those paragraphs (*Id.*).

Nucor's motion is premised on a misconception.  Federal Rule of Civil Procedure 12(f) grants district courts the power to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Courts may do so either *sua sponte* or upon motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.  Fed. R. Civ. P. 12(f)(1)–(2).  Federal Rule of Civil Procedure 7(a) defines a pleading as one of seven specific types of filings.  Motions, responses to motions, and affidavits supporting motions are not considered pleadings under Rule 7(a).  Fed. R. Civ. P. 7(a).  As such, they are not properly the object of a motion to strike.  *Palmer Holdings and Invs., Inc. v. Integrity Ins. Co.*, 505 F. Supp. 3d 842, 862 (S.D. Iowa 2020); *All Energy Corp. v. Energetix, LLC*, 985 F. Supp. 2d 974, 984 (S.D. Iowa 2012); *Mecklenburg Farm v. Anheuser-Busch, Inc.*, 250 F.R.D. 414, 420 n.7 (E.D. Mo. 2008) ("Motions, briefs, memoranda, objections or affidavits may not be attacked by a motion to strike.").

For these reasons, Nucor's motion to strike is not properly raised for purposes of Rule 12(f), and the Court declines to exercise its discretion to strike the disputed statements.  Instead, the Court "treats the argument[s] in favor of the Motion to Strike as a challenge to the significance that the Court should accord to" the disputed statements.  *Palmer Holdings and Invs.*, 505 F. Supp. 3d at 862.  In conducting its summary judgment analysis, the Court will therefore give them such weight as they properly merit in the light of Rule 56 and Local Rule 56.1.

Turning first to the challenged statements, in paragraph 22 of Nucor's statement of facts, Nucor asserts that, prior to the expiration of Mr. Shelton's extended furlough leave, there were no

other open positions at Nucor for which Mr. Shelton would have been qualified for consideration in the light of his restrictions (Dkt. No. 27, ¶ 22). Mr. Shelton responded: "Denied, other than the Truck Scales Clerk position." (Dkt. No. 34, ¶ 22). Mr. Shelton cited no record evidence in support of this denial. In paragraph 30, Nucor contends that, after recovering from his injury, Mr. Nash was able to work with restrictions (Dkt. No. 27, ¶ 30). Mr. Shelton denies this, asserting that Mr. Nash was returned to work with accommodation without bidding (Dkt. No. 34, ¶ 30). Mr. Shelton cited no record evidence in support of this denial. The Court deems Nucor's allegations in these paragraphs admitted by Mr. Shelton.

In response to each of paragraphs 8, 9, and 12, Mr. Shelton agrees with Nucor's statement in each paragraph but offers the qualifier that Mr. Shelton was denied a spinal cord stimulator or accommodation, citing no record evidence in support of his qualifier (Dkt. No. 34, ¶¶ 8, 9, 12). In response to paragraph 32, Mr. Shelton agrees with Nucor's statement but qualifies that the position was awarded without bidding for the position, citing no record evidence in support of his qualifier (Dkt. No. 34, ¶ 32). The Court understands that Mr. Shelton admits Nucor's allegations in paragraphs 8, 9, 12, and 32.

The Court now turns to Nucor's challenge to paragraphs 3, 4, 6, 7, 8, 9, 10, and 11 of Mr. Shelton's affidavit submitted in support of his response to Nucor's motion for summary judgment (Dkt. No. 37, at 3; *see also* Dkt. No. 32-1). Pursuant to Federal Rule of Civil Procedure 56(c)(4), an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Having examined the entire record in this case, Mr. Shelton's statements are based on Mr. Shelton's personal knowledge, and the Court determines that there are ways in which such facts

would be admissible in evidence at trial, including but not limited to applicable exceptions to hearsay exclusions.

For these reasons, the Court denies Nucor's motion to strike (Dkt. No. 36). The Court gives the challenged statements due consideration in the light of Federal Rule of Civil Procedure 56 and Local Rule 56.1.

## II.    Factual Background

Nucor filed a statement of undisputed material facts (Dkt. No. 27), and Mr. Shelton filed a response (Dkt. No. 34). The Court draws the following undisputed facts from these filings, the pleadings, and the record evidence.

Nucor is a foreign limited partnership organized under the laws of Delaware with its principal place of business at 5929 E. State Highway 18, in Armorel, Mississippi County, Arkansas (Dkt. Nos. 1, ¶ 5; 7, ¶ 5). Nucor operates the largest structural steel mill in the Western Hemisphere and has more than 800 employees (Dkt. Nos. 1, ¶ 8; 7, ¶ 8). Nucor has the capacity to produce over 2.5 million tons per year of wide-flange beams, H-piling, sheet piling, standard I-beams, channels, and various other structured shapes (Dkt. Nos. 1, ¶ 8; 7, ¶ 8). Mr. Shelton's employment with Nucor commenced on or about May 22, 2002 (Dkt. Nos. 27, ¶ 4; 34, ¶ 4). On or about June 25, 2020, Mr. Shelton reported to his supervisor that he injured his back when he fell stepping over the roll line (Dkt. Nos. 27, ¶ 5; 34, ¶ 5). On that same day, Nucor filed a workers' compensation claim on Mr. Shelton's behalf (Dkt. Nos. 27, ¶ 6; 34, ¶ 6). On June 28, 2020, Mr. Shelton went on paid sick leave pursuant to Nucor's paid sick leave policy (Dkt. Nos. 27, ¶ 7; 34, ¶ 7).

On September 10, 2020, Nucor sent Mr. Shelton a letter notifying him that his paid sick leave was set to expire on September 27, 2020 (Dkt. Nos. 27, ¶ 8; 34, ¶ 8). The September 10, 2020, letter informed Mr. Shelton that, since he had not been cleared by his doctor to return to

work, he would be placed on furlough leave pursuant to Nucor's furlough leave policy (Dkt. Nos. 27, ¶ 9; 34, ¶ 9). Per company policy, in an effort to make sure employees—referred to by Nucor as "teammates"—are able to maintain employment when dealing with medical issues after the expiration of any eligible paid sick leave, Nucor places employees on furlough leave for up to one year measured from the date upon which the paid sick leave expires (Dkt. Nos. 27, ¶ 10; 34, ¶ 10). The September 10, 2020, letter further explained to Mr. Shelton that he would have the opportunity to bid on any open positions if he was able to provide a valid work release from a physician and return to work by September 27, 2021 (Dkt. Nos. 27, ¶ 11; 34, ¶ 11). Mr. Shelton remained off of work through the remainder of 2020 and 2021, except for brief periods of time when he was able to return and work as a melt shop torch inspector before having to go back out due to his injury (Dkt. Nos. 27, ¶ 12; 34, ¶ 12). Mr. Shelton was not able to provide Nucor with a full return-to-work release prior to the expiration of his furlough leave (Dkt. Nos. 27, ¶ 13; 34, ¶ 13).

On January 24, 2022, Mr. Shelton submitted a return-to-work physician authorization stating that he could return to work but needed "sedentary duty" and "limited walking" (Dkt. Nos. 27, ¶ 14; 34, ¶ 14). Mr. Shelton's furlough leave was set to expire on February 2, 2022, pursuant to Nucor policy, but Nucor extended his furlough leave until April 2, 2022 (Dkt. Nos. 27, ¶ 15; 34, ¶ 15). Nucor's decision to extend Mr. Shelton's furlough period was made to allow him—at least ostensibly—to bid on a Truck Scales Clerk position that had opened on January 29, 2022, and which was consistent with Mr. Shelton's medical restrictions (Dkt. Nos. 27, ¶ 16; 34, ¶ 16). Mr. Shelton was subsequently denied the Truck Scales Clerk position (Dkt. Nos. 27, ¶ 21; 34, ¶ 21). Nucor terminated Mr. Shelton's employment on April 2, 2022 (Dkt. No. 27, ¶ 23; *See* Dkt. No. 34, ¶¶ 23–24). Nucor provided Mr. Shelton with approximately 20 months of paid and unpaid leave from June 28, 2020, to April 2, 2022 (Dkt. Nos. 27, ¶ 24; 34, ¶ 24). On June 27, 2022, Mr.

Shelton filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (Dkt. Nos. 27, ¶ 25; 34, ¶ 25).

Another Nucor employee, Brian Godsey, was injured on or about January 18, 2006 (Dkt. Nos. 27, ¶ 26; 34, ¶ 26).  Brian Godsey was employed as a Locomotive Operator at the time of his injury (Dkt. Nos. 27, ¶ 27; 34, ¶ 27).  Kenneth Nash, also a Nucor employee, was injured on or about April 17, 2008 (Dkt. Nos. 27, ¶ 29; 34, ¶ 29).  After his injury, Kenneth Nash was awarded the Truck Scales Clerk position on September 6, 2007 (Dkt. Nos. 27, ¶ 32; 34, ¶ 32).

### III.    Summary Of Arguments

In support of its motion for summary judgment, Nucor advances several arguments.  First, Nucor argues that Mr. Shelton's disability discrimination claims under the ADA and ACRA fail as a matter of law (Dkt. No. 28, at 12–19).  Nucor contends that Mr. Shelton has presented no direct evidence of discrimination for purposes of a disability discrimination claim and so must rely on the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), according to which a plaintiff may shift the burden to the defendant to show a nondiscriminatory reason for an adverse employment action if the plaintiff can present a *prima facie* case of discrimination (*Id*, at 13–14).  Mr. Shelton cannot establish even a *prima facie* case of discrimination, the argument goes, because Mr. Shelton cannot demonstrate a but-for causal connection between his disability and his termination, particularly given that his own testimony on the subject is inconsistent (*Id.*, at 14–17).  Even if Mr. Shelton could make out a *prima facie* case of discrimination, Nucor states that it had legitimate, nondiscriminatory reasons for terminating Mr. Shelton—namely, Mr. Shelton was unable to return to work after more than a year of leave and scored the lowest of any of the applicants for the Truck Scales Clerk position, the

7

only open position he could perform given his disability (*Id.*, at 17–18). Nucor contends that Mr. Shelton cannot show that these nondiscriminatory reasons were pretextual (*Id.*, at 18–19).

Second, Nucor argues that Mr. Shelton's retaliation claims fail as a matter of law (*Id.*, at 19–23). To the extent that Mr. Shelton alleges retaliation under the ACRA based upon his filing of a workers' compensation claim, Nucor contends that it is barred under the exclusivity provisions of Arkansas's workers' compensation laws (*Id.*, at 20). With respect to ADA retaliation, Nucor asserts that Mr. Shelton failed to exhaust his administrative remedies by failing to allege a retaliation claim in his EEOC charge of discrimination (*Id.*, at 20–21). Even if Mr. Shelton had properly raised the retaliation issue before the EEOC, Nucor contends that Mr. Shelton cannot make out a *prima facie* case of retaliation because Mr. Shelton cannot show any causal connection between the workers' compensation claim and Mr. Shelton's termination more than 21 months later (*Id.*, at 21–23).

Third, Nucor argues that Mr. Shelton's failure to accommodate claims under the ADA and ACRA fail as a matter of law (*Id.*, at 24–28). Even if Mr. Shelton could make out a *prima facie* disability discrimination claim, Nucor contends that Mr. Shelton was sufficiently accommodated with more than 20 months of leave and the opportunity to bid on the Truck Scales Clerk position (*Id.*, at 25–26). Nucor maintains that it was under no obligation to award Mr. Shelton the Truck Scales Clerk position given that he was found not to be the most qualified candidate for the position (*Id.*, at 26–28).

In his response in opposition to Nucor's motion for summary judgment, Mr. Shelton argues that his disability discrimination claims do not fail because he has direct evidence of discrimination in the form of Nucor's refusal "to allow Plaintiff the accommodation he desired without bidding on the Truck Scales Clerk's position," given that two other Nucor employees, Brian Godsey and

Kenneth Nash, were allegedly given accommodations without bidding (Dkt. No. 33, at 18). Even without direct evidence of discrimination, Mr. Shelton contends that he can make out a *prima facie* case of discrimination for purposes of the *McDonnell Douglas* burden-shifting framework because the bidding process for the Truck Scales Clerk position was allegedly a "sham" in which Mr. Shelton was "denied [] his desired accommodation without by contrived criticism by Kenneth Nash who received an accommodation without bidding" (*Id.*, at 19–20). Mr. Shelton alleges that the real reason for his termination was that he had "become a liability" for Nucor and the workers' compensation adjuster, who had denied him a spinal cord stimulator for his injury (*Id.*, at 17, 19). Mr. Shelton draws the inference that "[i]t is not a coincidence that Nucor terminated Plaintiff coinciding with workers' compensation's denial of all future benefits after approving all benefits for over one year" (*Id.*, at 19). Mr. Shelton believes that Nucor's alleged decision to allow Kenneth Nash and Brian Godsey to "return[] to work without bidding" after their injuries demonstrates that there was no legitimate nondiscriminatory reason for Nucor's conduct (*Id.*, at 20).

Mr. Shelton also argues that his retaliation claims survive summary judgment (*Id.*, at 21). Mr. Shelton appears to argue that he has exhausted his administrative remedies because, although a retaliation claim under state law is to be decided by the Arkansas Workers' Compensation Commission ("AWCC"), this principle is inapplicable to him because AWCC has allegedly violated his Fourteenth Amendment due process and equal protection rights (*Id.*). Mr. Shelton contends that he can make out a *prima facie* retaliation claim because Nucor's nursing staff allegedly encouraged employees not to seek prescription medications to avoid reporting their injuries to OSHA and because "[t]he time frame between Plaintiff's denial of further workers' compensation benefits and his discharge is minimal" (*Id.*).

Finally, Mr. Shelton argues that his failure to accommodate claims survive as a matter of law because Mr. Shelton was denied the Truck Scales Clerk position without bidding, whereas Kenneth Nash and Brian Godsey allegedly received accommodations without bidding (*Id.*, at 22–23). In any case, Mr. Shelton alleges that the bidding process was a sham (*Id.*, at 22). Mr. Shelton also asserts that "20 months of paid leave out of an employee benefit fund is not an accommodation. An accommodation is providing Plaintiff with employment" (*Id.*).

In its reply to Mr. Shelton's response to the motion for summary judgment, Nucor attacks Mr. Shelton's assertion that there is direct evidence of discrimination, noting that Kenneth Nash and Brian Godsey were given accommodations despite being members of the same protected group—namely, those with disabled status—as Mr. Shelton (Dkt. No. 35, at 4–5). Nucor also states that Mr. Shelton's workers' compensation claim with Nucor's third-party carrier is unrelated to the present lawsuit and that Nucor has no control over decisions made by the carrier (*Id.*, at 6). For this reason, Nucor maintains that any attempt to link the third-party carrier's denial of benefits to Mr. Shelton's termination is unfounded (*Id.*, at 9). Likewise, to the extent Mr. Shelton alleges a Fourteenth Amendment claim against AWCC, Nucor argues that this also has no bearing on the instant dispute between Mr. Shelton and Nucor (*Id.*, at 7–8). Finally, with respect to most of the claims made by Mr. Shelton in the response to the motion for summary judgment, Nucor asserts that Mr. Shelton's claims are either wholly unsupported by the record or else contradicted by the record evidence (*Id.*, at 2–4).

## IV. Discussion

### A. Summary Judgment Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact to be decided at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *UnitedHealth Grp. Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Federal Rule of Civil Procedure 56 and noting that summary judgment is proper if there is no genuine issue of material fact in dispute for trial).

Under such circumstances, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322. "In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'" *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923–24 (8th Cir. 2004) (internal citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Reg'l Med. Center v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (quoting *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987)).

### B.    ADA And ACRA Disability Discrimination Claims

#### 1.    Legal Standard

"The ADA prohibits covered employers from discriminating against a qualified individual on the basis of disability in regard to the discharge of employees." *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016) (quoting 42 U.S.C. § 12112(a)). To establish successfully a

11

claim for disability discrimination, a plaintiff must either show direct evidence of discrimination or else make out a *prima facie* case of discrimination under the *McDonnell Douglas* burden-shifting framework. *Id.* Under the *McDonnell Douglas* framework, once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Garcia v. Primary Health Care, Inc.*, 604 F. Supp. 3d 765, 774 (S.D. Iowa 2022) (quoting *EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 969 (8th Cir. 2014)). Once the defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to the plaintiff to show "that the employer's proffered reason is merely a pretext for intentional discrimination." *Id.* (quoting *Prod. Fabricators*, 763 F.3d at 969). To make out a *prima facie* case of disability discrimination, plaintiffs must show:  (1) the plaintiff has a disability within the meaning of the ADA; (2) the plaintiff is a "qualified individual" under the ADA; and (3) the plaintiff suffered an adverse employment action as a result of the disability. *Goosen v. Minn. Dep't of Transp.*, 105 F.4th 1034, 1040 (8th Cir. 2024) (quoting *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711 (8th Cir. 2003)); *Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 370 (8th Cir. 2018).  Discrimination claims brought under the ACRA are analyzed under the same principles as ADA claims. *Alexander v. E. Tank Servs., Inc.*, 505 S.W.3d 239, 245 (Ark. Ct. App. 2016).

### 2.    Direct Evidence Of Discrimination

Mr. Shelton posits that he has presented direct evidence of discrimination and thus need not rely on the *McDonnell Douglas* burden-shifting framework.  Namely, he alleges that two other injured employees, Kenneth Nash and Brian Godsey, were given accommodations without being required to bid for positions.  For purposes of an ADA discrimination claim, direct evidence is that which shows "a specific link between the alleged discriminatory animus and the challenged

decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1033 (8th Cir. 2012) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir.2004)). This includes "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude, where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor." *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 543 (8th Cir. 2018) (quoting *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 966 (8th Cir. 2006)). Ultimately, the term "direct" refers to "the causal strength of the proof, not whether it is 'circumstantial' evidence." *St. Martin*, 680 F.3d at 1033 (quoting *Griffith*, 387 F.3d at 736).

In this case, even if Mr. Shelton's unsupported allegations are to be believed, the alleged accommodations Nucor purportedly gave to two other injured employees more than 10 years prior to Mr. Shelton's injury neither implicate "conduct or statements . . . directly reflecting" a discriminatory attitude towards Mr. Shelton's disability nor furnish a specific link between a discriminatory mindset regarding Mr. Shelton's disability and Nucor's decision to terminate Mr. Shelton. Even as alleged by Mr. Shelton, the facts at most show disparate treatment *among disabled employees*, not discrimination against Mr. Shelton based on his disabled status. As such, if Mr. Shelton is to establish a discrimination claim, he must rely on indirect evidence pursuant to the *McDonnell Douglas* burden-shifting framework.

### 3.    *Prima Facie* Case Of Discrimination

Mr. Shelton argues that, even if he does not have direct evidence of discrimination, he can still make out a *prima facie* case of discrimination using indirect evidence. Nucor does not dispute that Mr. Shelton is disabled within the meaning of the ADA, that Mr. Shelton is a qualified

individual within the meaning of the ADA, or that he suffered an adverse employment action. However, the parties dispute as to the third element of a *prima facie* ADA discrimination case—namely, whether Mr. Shelton was terminated *because of* his disability.  Mr. Shelton argues that Nucor's allegedly disparate treatment of Kenneth Nash and Brian Godsey, along with the allegation that the bidding process for the Truck Scales Clerk position was a sham, suffices to create an inference of discrimination against Mr. Shelton.  Specifically, Mr. Shelton articulates the view that he was terminated because his disability had become a liability to Nucor and the workers' compensation adjuster.

The Court first examines the allegation that the interview and bidding process for the Truck Scales Clerk position was a sham.  Nucor cites to record evidence indicating that Mr. Shelton was rated lower than two other candidates during the interview process for the Truck Scales Clerk Position (Dkt. No. 27-8).  Mr. Shelton contends that the interview process was a sham and cites to his own deposition testimony in support of that assertion.  However, none of the testimony cited in Mr. Shelton's response to the summary judgment motion suffices to create an issue of triable fact with respect to the bidding and interview process, even when all reasonable inferences from his deposition testimony and the record evidence before the Court are construed in Mr. Shelton's favor.  In the cited deposition testimony, Mr. Shelton testifies that he had a conversation with Kenneth Nash, wherein Kenneth Nash allegedly told Mr. Shelton that Rocky Long—one of the panelists who interviewed Mr. Shelton for the Truck Scales Clerk position—had told Kenneth Nash that Mr. Shelton was denied the Truck Scales Clerk position because "we didn't want him up here anyway.  That's why he didn't get the job" (Dkt. No. 32-6, at 3:1–13).  This is inadmissible double hearsay and, in any case, does not implicate Mr. Shelton's disability.  Indeed, elsewhere in testimony cited by Mr. Shelton in opposition to the motion for summary judgment, Mr. Shelton

himself states that he "didn't feel discriminated against" or believe he was discriminated against based on his disabled status during the interview process by Rocky Long or any of the other panelists (*Id.*, at 11:2–17).

Similarly, in testimony cited by Mr. Shelton in opposition to the motion for summary judgment, Mr. Shelton disputes the results of his evaluation by the interview panel for the Truck Scales Clerk position only on grounds that he "feel[s] like I'm an average employee" rather than a "below-average employee," and Mr. Shelton suggests that the successful candidate was chosen because of family ties (*Id.*, at 19:10–25:6). Nowhere does Mr. Shelton provide evidence suggesting that the evaluation was a sham or that his not receiving the Truck Scales Clerk position was otherwise connected with his disability. Indeed, in testimony cited by Mr. Shelton, Mr. Shelton testified explicitly, "I don't think that I was denied the position [because] of the injury. I feel like I was denied for other personal reasons" (*Id.*, at 20:22–25:2). As such, reviewing all record evidence before the Court and construing all reasonable inferences from that record evidence in favor of Mr. Shelton, the Court finds that Mr. Shelton has failed to create a genuine disputed issue of material fact with respect to the interview process for the Truck Scales Clerk position.

Mr. Shelton also argues that an inference of discrimination can be drawn from the fact that two other injured employees of Nucor, Kenneth Nash and Brian Godsey, were allegedly given accommodations without bidding. As explained, even as alleged by Mr. Shelton, these facts do not indicate discrimination against Mr. Shelton because of his disability, as both employees alleged to have received preferential treatment in comparison with Mr. Shelton were also allegedly disabled and therefore members of the same protected group for purposes of the ADA. Further, Mr. Shelton cites to no evidence indicating that he was treated differently from Kenneth Nash,

Brian Godsey, or any other Nucor employee *because of* Mr. Shelton's disability. As such, even if Mr. Shelton could establish allegedly differential treatment accorded to Kenneth Nash and Brian Godsey, that does not create an inference of discrimination as to Mr. Shelton based on Mr. Shelton's disability.

Likewise, with respect to Mr. Shelton's allegation that he was terminated because his disability had become a liability to Nucor and the workers' compensation adjuster, Mr. Shelton cites to no record evidence in support of this argument. By contrast, Nucor cites to uncontroverted record evidence indicating that the Nucor's third-party workers' compensation adjuster was not influenced by any Nucor employee in making its decisions with respect to Mr. Shelton's workers' compensation claim (Dkt. Nos. 27-10, at 16:10–24; 27-12, at 22:23–25:14).

For these reasons, the Court finds that Mr. Shelton has failed to establish a *prima facie* case of discrimination under the ADA and ACRA.

### 4.     Legitimate Nondiscriminatory Reason For Termination

Even assuming *arguendo* that Mr. Shelton could establish a *prima facie* case of discrimination based on his disabled status, Nucor has alleged a legitimate, nondiscriminatory reason for Mr. Shelton's termination. Namely, Nucor alleges, with citation to record evidence, that Nucor terminated Mr. Shelton's employment after granting him nearly two years of paid and unpaid leave pursuant to Nucor policy because Mr. Shelton was unable to return to his position and because there were no other open positions at Nucor for which Mr. Shelton was qualified besides the Truck Scales Clerk position, a position for which Mr. Shelton was not selected. As noted above, these facts are undisputed. Mr. Shelton's only argument that Nucor's stated nondiscriminatory reasons for Mr. Shelton's termination are pretextual is that Kenneth Nash and Brian Godsey were provided accommodations without bidding. However, as explained above,

these allegations fail to create an inference of discrimination against Mr. Shelton's disability at even the *prima facie* stage.

In any case, at the pretext stage of the *McDonnell Douglas* framework, the burden lies with the plaintiff to show that "the employees used for comparison [are] similarly situated in all relevant respects." *Prod. Fabricators*, 763 F.3d at 970 (quoting *Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 678 (8th Cir.), *cert. denied*, 571 U.S. 1095 (2013)). This is a "rigorous" test. *Id.*; *Torgerson v. City of Rochester*, 643 F.3d 1031, 1051 (8th Cir. 2011); *Tomshack v. Wilkie*, 584 F. Supp. 3d 740, 754 (D.S.D. 2022) (quoting *Prod. Fabricators*, 763 F.3d at 970). Mr. Shelton has not carried his "rigorous" burden of demonstrating that Kenneth Nash and Brian Godsey—both of whom suffered their respective injuries more than a decade prior to Mr. Shelton's injury and neither of whom occupied the same position as Mr. Shelton—were similarly situated to Mr. Shelton "in all relevant respects." There is no record evidence to establish that the same Nucor policies were in effect at the time of the events involving Kenneth Nash and Brian Godsey and the events involving Mr. Shelton. There is also no record evidence to establish that the same Nucor decision makers were involved in the events involving Kenneth Nash and Brian Godsey and the events involving Mr. Shelton.

For these reasons, the Court finds that, even if Mr. Shelton has made out a *prima facie* case of disability discrimination, he has failed to create an issue of triable fact as to Nucor's alleged legitimate, nondiscriminatory reason for Mr. Shelton's termination. The Court thus grants summary judgment to Nucor on Mr. Shelton's ADA and ACRA disability discrimination claims.

## C.    ADA And ACRA Retaliation Claims

The ADA provides that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such

17

individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *Hill v. Walker*, 737 F.3d 1209 (8th Cir. 2013) (quoting 42 U.S.C. § 12203(a)).  As with discrimination claims, plaintiffs may either provide direct evidence of retaliation or make out a *prima facie* case of retaliation pursuant to the *McDonnell Douglas* burden-shifting framework described above. *Prod. Fabricators*, 763 F.3d at 972.  To make out a *prima facie* case of retaliation under the ADA, plaintiff must show that:  (1) the plaintiff engaged in a statutorily protected activity; (2) the employer took an adverse action against the plaintiff; and (3) there was a causal connection between the adverse action and the protected activity.  *Id.* (quoting *Hill*, 737 F.3d at 1218).  Retaliation claims brought under the ACRA are analyzed under the same standard as ADA retaliation claims. *James v. George's, Inc.*, 646 S.W.3d 238, 243 (Ark. Ct. App. 2022), *reh'g denied* (July 13, 2022); *Davis v. Kimbel Mech. Sys., Inc.*, 322 F.R.D. 470, 493 & n.18 (W.D. Ark. 2017).

Nucor contends that Mr. Shelton's ADA retaliation claims are barred because he failed to properly raise them before the EEOC in his charge of discrimination.  "Under the ADA, plaintiffs must exhaust their administrative remedies by filing a charge with the EEOC before filing a lawsuit against an employer." *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 944 (8th Cir. 2021); *Donnell v. Rockwood Sch. Dist.*, 670 F. Supp. 3d 883, 889 (E.D. Mo. 2023).  Administrative remedies are deemed exhausted as to all incidents of discrimination that are "like or reasonably related to" the allegations in the charge of discrimination. *Donnell*, 670 F. Supp. 3d at 889.  The Eighth Circuit Court of Appeals has "long treated discrimination and retaliation claims as distinct for exhaustion purposes, so that exhausting one usually does not exhaust the other." *Weatherly*, 994 F.3d at 945.  In this case, Mr. Shelton's EEOC charge does not check the box for retaliation (Dkt. No. 27-9, at 2).  Likewise, the narrative portion of Mr. Shelton's EEOC charge does not indicate that Nucor

retaliated against him for filing a workers' compensation claim, only that Mr. Shelton claims to have been denied a spinal cord stimulator by Nucor's workers' compensation insurance provider and AWCC (*Id.*, at 3). Mr. Shelton makes no substantive argument as to how he has exhausted his administrative remedies with respect to his ADA retaliation claim. As such, the Court finds that Mr. Shelton has failed to exhaust his administrative remedies with respect to his ADA retaliation claim.

To the extent that Mr. Shelton alleges a state-law retaliation claim under the ACRA on the basis that Nucor retaliated against Mr. Shelton for seeking workers' compensation benefits, Nucor notes that Arkansas's workers' compensation law provides the exclusive remedy. *See Lambert v. LQ Mgmt., L.L.C.*, 426 S.W.3d 437, 440–41 (Ark. 2013); Ark. Code Ann. §§ 11-9-105, 107. Mr. Shelton does not dispute this. Mr. Shelton counters only that "Plaintiff makes the argument he is denied due process and equal protection under the 14th Amendment to the United States Constitution" (Dkt. No. 33, at 21). The Court interprets this statement as an allegation that AWCC violated Mr. Shelton's Fourteenth Amendment rights in denying his claims. Mr. Shelton does not cite to any record evidence in support of this argument, and, in any case, the issue is irrelevant to whether Mr. Shelton's state law claims against defendant Nucor are properly governed by Arkansas's workers' compensation laws.

For these reasons, the Court grants summary judgment to Nucor on Mr. Shelton's ADA and ACRA retaliation claims.

### D.    ADA And ACRA Failure To Accommodate Claims

Failing to make a reasonable accommodation for a disabled employee or otherwise denying employment opportunities to a disabled employee because of the need to make a reasonable accommodation constitutes discrimination under the ADA. 42 U.S.C. § 12112(b)(5). To establish

a *prima facie* case for failure to accommodate under the ADA, a plaintiff must show all the elements of a *prima facie* ADA discrimination case and that the employer failed to engage in good faith in an "interactive process" with the plaintiff to find a suitable accommodation. *Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 457 (8th Cir. 2022). To establish that the employer did not engage in the interactive process in good faith, a plaintiff must show that: (1) the employer knew about the disability; (2) the plaintiff requested an accommodation for his disability; and (3) the employer did not make a good faith effort to assist the employee in seeking accommodations. *Id.* (quoting *Sharbono v. N. States Power Co.*, 902 F.3d 891, 894 (8th Cir. 2018)). The same standard applies to claims brought under ACRA. *See James*, 2022 646 S.W.3d at 243–244; *Davis*, 322 F.R.D. at 493 & n.18.

For reasons described above, the Court finds that Mr. Shelton has failed to establish all the elements of a *prima facie* disability discrimination under the ADA and ACRA. As such, his failure to accommodate claim also fails for these same reasons. However, even assuming *arguendo* that Mr. Shelton could establish all the elements of a *prima facie* disability discrimination claim, Mr. Shelton has failed to carry his burden of showing that Nucor did not make a good faith effort to assist Mr. Shelton in seeking accommodations. It is undisputed that Nucor allowed Mr. Shelton to take more than 20 months of paid and unpaid leave pursuant to its policy and that it extended Mr. Shelton's furlough leave beyond policy limits to allow him to bid on the open Truck Scales Clerk position. Likewise, there is no record evidence to establish that there were available positions at Nucor besides the Truck Scales Clerk position for which Mr. Shelton was qualified, even when all reasonable inferences from the record evidence are construed in favor of Mr. Shelton. Mr. Shelton contends that the bidding and interview process for the Truck Scales Clerk position was a sham and that other employees enjoyed accommodations without bidding. For

reasons explained in the Court's analysis of Mr. Shelton's ADA and ACRA discrimination claims, Mr. Shelton has failed to create a triable issue of fact with respect to either of these contentions.

For these reasons, the Court grants summary judgment to Nucor on Mr. Shelton's ADA and ACRA failure to accommodate claims.

### E.    Title VII And Fourteenth Amendment Claims

Mr. Shelton's complaint cites to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.* (Dkt. No. 1, at 1). However, this issue is not briefed by either party at the summary judgment stage, and no Title VII claim separate and apart from the claims addressed by the parties in their briefing and by the Court in this Order appears to have been asserted in Mr. Shelton's EEOC charge (*See* Dkt. No. 27-9). As such, to the extent that Mr. Shelton alleges a claim under Title VII, the Court finds that it is barred for failure to exhaust administrative remedies. *See* 42 U.S.C. § 2000e-5(e)(1); *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850–51 (8th Cir. 2012).

Mr. Shelton's complaint also alleges that Mr. Shelton's Fourteenth Amendment due process and equal protection rights have been violated (Dkt. No. 1, ¶ 23). To the extent that Mr. Shelton is alleging that Nucor violated his Fourteenth Amendment rights, those claims fail under the state action requirement, as due process and equal protection do not attach to disputes between private parties. *See Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172 (1972). Likewise, to the extent that Mr. Shelton alleges a Fourteenth Amendment claim against AWCC or the State of Arkansas, those claims fail as not properly raised in this action, where Mr. Shelton has named only Nucor as a defendant.

For these reasons, to the extent that Mr. Shelton alleges claims under Title VII or the Fourteenth Amendment, the Court grants summary judgment to Nucor on those claims.

## V.     Conclusion

For the foregoing reasons, the Court denies Nucor's motion to strike (Dkt. No. 36).  The Court grants Nucor's motion for summary judgment on all claims (Dkt. No. 26).  Mr. Shelton's request for relief is denied.

It is so ordered this 21st day of January, 2025.

_Kristine G. Baker_
_____
Kristine G. Baker
Chief United States District Judge